[Cite as *Rhoden v. Hurt*, 2020-Ohio-5065.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

HEIDI RHODEN,                          :

    Plaintiff-Appellee,              :       Case No. 20CA1114

    vs.                              :

DEVIN HURT,                            :       DECISION & JUDGMENT ENTRY

    Defendant-Appellant.             :

_____

APPEARANCES:

Christina M. Strasel, Batavia, Ohio, for Appellant[1].

Daniel Getty, Centerville, Ohio, for Appellee.

_____

CIVIL CASE FROM COMMON PLEAS COURT, JUVENILE DIVISION
DATE JOURNALIZED: 10-13-20
Abele, J.

{¶ 1} This is an appeal of an Adams County Common Pleas Court, Juvenile Division, judgment that temporarily suspended the shared parenting time of Devin Hurt, defendant below and appellant herein, until the conclusion of his daughter's football season. Appellant assigns three errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING
THAT FATHER WAS NOT LIKELY TO COMPLY WITH THE
COURT'S ORDER TO TAKE D.H. TO FOOTBALL

_____
[1] Different counsel represented appellant during the trial court proceedings.

PRACTICES AND GAMES."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ABUSED ITS DISCRETION IN TEMPORARILY SUSPENDING FATHER'S PARENTING TIME THROUGH FOOTBALL SEASON."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING THE CHILD PARTICIPATE IN FOOTBALL WHEN FATHER'S LACK OF CONSENT WAS REASONABLE."

{¶ 2} Appellant and Heidi Rhoden, defendant below and appellee herein, have one child, D.H., born in 2006. On December 10, 2018, the parties' shared parenting plan designated appellee the residential parent for school purposes. Concerning the child's extracurricular activities, the plan required the parents to consider the child's wishes, consult with each other, and not unreasonably withhold consent from participation in those activities.

{¶ 3} On July 19, 2019, appellee filed a motion to "review the current visitation arrangement as substantial changes have occurred since the last Order. Undersigned, on behalf of mother and minor child, requests that the Court investigate such matters by conducting a review conference by telephone with counsel." Appellee asserted that "according to reports, minor child has been spending most if not all of her visitation time at paternal grandmother's home, during father's visitation. Moreover, father will not agree to minor child participating in football despite minor child's desire to do so. As matter of point, in actuality, father has denied minor child's participation in any extra-curricular activity."

{¶ 4} At the trial court's August 19, 2019 hearing, appellant testified that his main

concerns about football are the time commitment and safety. Appellant would not allow appellee to take D.H. from his home to football practice on the first day because, as he expressed to his daughter, "our family time to me is more important than any one extracurricular." Appellant stated that D.H. also plays in the band, and the previous year participated in kindness club and the school musical, and in years past soccer, softball, and basketball, "none of which ever took the amount of time that football has." Appellant testified:

> We spent all these years trying to share 48 hours a week every other week with the entirety of my family. You know, we've * * * tried * * * to make sure she's got a relationship with all of her * * * family. We try to make sure we're doing family activities together so she can spend time with her siblings, and we keep a museum membership and we keep a zoo membership and we are members at the YMCA. And we get no time to do any of these things, our whole family waits on.

Concerning the time commitment, appellant added:

> Practice four days a week? Um, last year it was six to eight, they quit practicing at dark and then games on Saturdays. They're required to be there an hour before game time. Then if the games before running over that to that much later, I mean you're spending three, four hours at the fields every single Saturday. And you know, I mean that's, that's a huge chunk of my parenting time.

With regard to safety, appellant testified:

> And then on top of that you got the, you know, the health issues. We pulled our son from football two years ago because you know, the health concerns with it, it', it's dangerous. And I feel like there's some other compromises and alternatives that I've spoken to [D.H.] about that, you know, maybe we could compromise that are less risky.

Appellant continued:

> Everything that I've read says that youth football pre high school age football, puts the kids had significantly more risk of CTE in older ages and have behavioral issues in their growing developmental years. * * * I have legitimate concerns with football. It's * * * exhausting you know, last year for instance, they had no subs. They had just enough kids to play a game. So, nobody had ever come out of the

game, no matter how big a hit they took, didn't matter if they got rattled, they're right back up on their feet.   Getting drug through the game.

{¶ 5} Appellee testified that D.H. played football the past two years and anticipated playing again this year.   Appellee texted appellant about the upcoming season several weeks before it began and she thought the football issue had been resolved.   Appellee stated that appellant waited until the first day of football practice to tell D.H. that she could not participate.

{¶ 6} Appellee further testified that appellant did offer gymnastics and karate as substitute activities, but D.H. has no interest in those activities.   Appellee testified that she paid all football fees and pays a monthly band fee, although appellant recently agreed to pay half of band fees. When asked why she thought her daughter wanted to play football, appellee testified, "[I]f you seen her on the practice field, she absolutely loves it.   She loves the team.   She loves the, everything about it."   Appellee stated:

> [D.H.] absolutely loves it.   She's played, this will be her third year and she's she
> seems thrilled.   She washes her own uniform every night just to make sure that
> she has it ready for the next day. She had it washed Friday night, hanging up,
> drying to make sure she was able to take it to [appellant's] on Sunday.

{¶ 7} Appellee further testified that when D.H. is with appellant, she spends weekdays with appellant's parents and stays with appellant on weekends, a fact that appellant conceded. Appellee stated that she is willing, and has offered, to take D.H. from appellant's home to practice.   She also offered to allow D.H. to stay at her home during football days and give appellant alternate parenting time.   Appellee stated that D.H. has missed practices, and if she cannot play football, "she would be devastated."   After football season, appellee is amenable to D.H. participating in karate or gymnastics if she desires, but at the time of the hearing, "[s]he is already committed to football."   Although appellant testified that he had expressed to appellee

that "[D.H.] came to me complaining of anxiety attacks due to football last year," appellee testified that "I personally have never seen her have anxiety about it, getting into a new routine maybe, but no anxiety or anxiety attacks or anything."

{¶ 8} At the hearing's conclusion, the trial court pointed out appellant's inconsistent argument that football denies him one-on-one parenting time, when he lets his daughter stay with his mother three or four nights a week during his parenting time.  The court also noted the "inherent risks with football and stated that this whole life is dangerous, but we can't bubble wrap these children."   The court then asked appellant, "how do you want to resolve this?  She's going to football practice."   Appellant responded, "I feel like my opinions and concerns are being completely overlooked," and then expounded on why karate or gymnastics would be better.  The court then asked, "Do you remember my questions?" to which appellant replied, "[a]t this point, no, I kind of got off of it."

{¶ 9} The trial court remarked "I gave you a second chance right here * * *," and proceeded to suspend appellant's shared parenting time until football season concludes.  Trial counsel objected, however, and stated that appellant would take D.H. to practices and games if the court asked him to do so.  The court, however, indicated that it believed that it had asked, and appellant's response and actions indicated that he would not.

{¶ 10} On March 25, 2020, the trial court issued findings of fact and conclusions of law and temporarily suspended appellant's shared parenting time during football season.  The court did allow appellant visitation after Friday or Saturday games until Sunday at 6:00 p.m.  Once football season concludes, the parties must return to all terms and conditions of the shared parenting plan, or contact the court for a hearing for further modifications.  This appeal

followed.

I.

{¶ 11} In his first assignment of error, appellant asserts that the trial court abused its discretion in finding that he is unlikely to comply with the court's order to take D.H. to football practices and games. Appellant argues that he has obeyed court orders in the past, and the trial court did not provide him the opportunity to abide by the court's order here before the court unilaterally suspended his parenting time.

{¶ 12} "Appellate courts generally review 'the propriety of a trial court's determination in a domestic relations case' under the 'abuse of discretion' standard." *Sarchione v. Tookey*, 4th Dist. Athens No. 17CA41, 2018-Ohio-2716, ¶ 21, quoting *Clifford v. Skaggs*, 4th Dist. Gallia No. 17CA6, 2017-Ohio-8597, ¶ 9, quoting *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). Under this highly deferential standard, we must affirm the trial court's decision unless it is unreasonable, arbitrary, or unconscionable. *See State v. Beasley*, 152 Ohio St.3d 470, 2018-Ohio-16, 97 N.E.3d 474, ¶ 12, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 13} In *Davis v. Flickinger*, 77 Ohio St.3d 415, 418-419, 674 N.E.2d 1159 (1997), the Supreme Court of Ohio explained the abuse of discretion standard that applies in custody proceedings: "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." *Davis* at ¶ 4, citing *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 550 N.E.2d 178 (1990), syllabus. "The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something

that does not translate well on the written page." *Davis, supra,* at ¶ 4. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80–81, 461 N.E.2d 1273 (1984).

{¶ 14} Thus, we review the trial court's decision to modify the shared parenting plan for an abuse of discretion. Unlike a modification to the allocation of parental rights and responsibilities, a modification of a shared parenting plan term only requires proof that the modification is in the child's best interest. *Hasenjager v. Fisher*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 33. *See also* R.C. 3109.04(E)(2)(b).

{¶ 15} R.C. 3109.04(E)(2)(b) provides:

The court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree. Modifications under this division may be made at any time. The court shall not make any modification to the plan under this division, unless the modification is in the best interest of the children.

{¶ 16} In the case sub judice, the parties' 2018 Shared Parenting Plan provides:

A. The parents intend the child to continue in the Adams County School District. The parents agree they will consult with each other regarding the extra-curricular activities for the child. [Appellant] shall pay fifty percent (50%) and [appellee] shall pay fifty percent (50%) of the costs of all agreed upon extracurricular activity; including registration costs; uniforms; event fees and mandatory fundraisers. The parties agree that they shall not withhold consent unreasonably and shall consider the child's withes when making the determination of participation.

Once agreed upon, the parties shall ensure that whoever is registering the child for a particular activity has the registration funds seven (7) days prior to the

registration date.   Neither parent shall unreasonably withhold his or her consent to particular activity.   The parties agree that each will promptly notify the other of any activity involving the child, so that both parents may fully participate in all activities with the child.   The parties agree that extracurricular activities will be defined as those events connected with school, such as dance, team sports, lessons or other sporting activity.

B.   Scheduled parenting time periods shall not be delayed because the child had other scheduled activities (with friends, work, lessons, sports, etc.)   Both parents shall respect the child's schedule and shall allow for flexibility in exchange times to accommodate the child's activities.   Both parents are encouraged to attend all of the child's activities.

{¶ 17} The trial court concluded that, under R.C. 3109.04(F)(1)(f), appellant is not likely to comply with the court's order that D.H. be "permitted to conclude her obligation of attending all football practices and scheduled games during the period of Father's Shared Parenting Time."  Appellant, however, argues that the court did not order him to take D.H. to football practice or games, and also the court's March 25, 2020 entry did not include such an order.   Further, appellant argues that appellee presented no evidence that he failed to comply with court orders in the past, or that he will not comply in the future with orders.

{¶ 18} As indicated above, the trial court noted that R.C. 3109.04(F)(1) lists factors that a court shall consider to determine a child's best interests:

Specifically, R.C. section 3109.04(F)(1)(f) sets forth the factor of 'the parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights.   In the limited matter at hand, this appears to be the only relevant factor for the Court's consideration.

In applying this limited factor, it is the Court's conclusion and finding that Defendant Father, was not likely to comply with the Court's Order and that his daughter would be permitted to conclude her obligation of attending football practices and scheduled games during the period of Father's Shared Parenting time. The daughter had already missed practice during his parenting time and the Father repeatedly chose, when offered to provide his intent and plan of honoring the Court's determination that [D.H.] would be permitted to participate in and

> conclude the current season, to instead explain again how he felt his opinions and concerns were being completely overlooked.
>
> It is hereby the Order of the Court that Defendant's shared parenting time as set forth in the parties 12/8/2018 agreement is temporarily suspended until conclusion of the current football season. Father may have visitation privileges during said temporary period after the scheduled game is played, be it Friday or Saturday, until Sunday evening at 6:00 P.M., when Father shall return [D.H.] to the custody of the mother to allow [D.H.] to complete her football obligation for the season. Once football season is concluded, the parties shall contact the Court for a hearing for further modifications, or simply return to all terms and conditions of the agreed Shared Parenting Plan filed with the Court on December 18, 2018.

{¶ 19} In *Brown v. Brown*, 12th Dist. Clermont No. CA2018-08-064, 2019-Ohio-2164, father refused to transport his daughter to cheer competition or otherwise alter his parenting time to permit her to participate. The trial court terminated the shared parenting plan, designated mother sole residential parent, and ordered mother to have sole decision-making authority regarding extracurricular activities. In affirming, the Twelfth District concluded that the evidence indicated that father knew the importance of cheer to his daughter, yet did not support her participation because it interfered with his parenting time. In the case sub judice, the evidence touched on safety, but mostly focused on father's argument that football interferes with his parenting time. However, as in *Brown,* the evidence also reveals that appellant is well-aware of the importance of football to his daughter.

{¶ 20} In *Harleman v. Harleman,* 2d Dist. Montgomery Nos. 24702, 24722, 2012-Ohio-205, former wife filed a motion for contempt in connection with former husband's enrollment of the parties' child in tee-ball. The Second District affirmed the denial of the contempt motion and saw "no reason why a custodial parent's concern for her child's physical well-being should give her a veto power over the non-custodial parent's right to take the child to

a different physical activity than the physical activities preferred by the custodial parent." *Id.* at ¶ 14. In the case sub judice, although not a contempt action appellant expressed his disagreement and refused to support his daughter's football participation during his parenting time. His actions, unfortunately, support the trial court's conclusion that appellant will continue to refuse to support his daughter's participation in this extracurricular activity.

{¶ 21} Appellant argues that he suggested alternate extracurricular activities, such as karate and gymnastics. However, D.H. did not express interest in those activities. By contrast, the record reveals that D.H. enjoys football, at least at this stage in her life, and she desires to continue to play. Although appellant argues that the trial court did not actually previously order him to support D.H.'s football activities, the record reveals that appellant insisted throughout the hearing that he did not support his daughter's football activity, mostly due to the time commitment being "a huge chunk of my parenting time." The trial court noted, however, that D.H. spent many hours at her paternal grandmother's home. When the court asked appellant, "how do you want to resolve this? She's going to football practice," appellant did not agree to assist, but stated that his opinions and concerns "are being completely overlooked." Based on the foregoing exchange, and appellant's prior refusal to support D.H.'s activity, we cannot say that the trial court's conclusion is unreasonable, arbitrary, or unconscionable.

{¶ 22} Accordingly, based on the foregoing reasons, we overrule appellant's first assignment of error.

II.

{¶ 23} In his second assignment of error, appellant asserts that the trial court's temporary suspension of his parenting time through football season constitutes an abuse of discretion.

Appellee argues that, because the court's temporary suspension expired in November 2018 at the conclusion of football season, the issue is now moot.

{¶ 24} Appellee cites *James A. Keller, Inc. v. Flaherty,* 74 Ohio App.3d 788, 600 N.E.2d 736 (10th Dist.1991) in support of the argument that more than a theoretical possibility must exist that the action will again arise. In *Keller,* an unsuccessful bidder sued the Director of Department of Administrative Services (DAS) and sought to enjoin the Director from executing a construction contract. After the trial court entered final judgment and voided the initial bids, and during the pending appeal, the DAS awarded appellee the contract. The Tenth District determined that more than a theoretical possibility must exist that the action will again arise as "'reasonable expectation' or a 'demonstrated probability' must exist that the same controversy will recur involving the same complaining party." *Keller,* at 792, citing *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353, (1982), citing *Weinstein v. Bradford*, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975).

{¶ 25} "The doctrine of mootness is rooted in the 'case' or 'controversy' language of Section 2, Article III of the United States Constitution and in the general notion of judicial restraint." *Keller*, citing 1 Rotunda, Novak & Young, *Treatise on Constitutional Law: Substance and Procedure,* 97, Section 2.13 (1986). "While Ohio has no constitutional counterpart to Section 2, Article III, Ohio courts have long recognized that a court cannot entertain jurisdiction over a moot controversy." *Id.* A case becomes moot, if at any stage, there ceases to be an actual controversy between the parties. *See Miner v. Witt*, 82 Ohio St. 237, 92 N.E. 21 (1910); *see also Fortner v. Thomas,* 22 Ohio St.2d 13, 14, 257 N.E.2d 371 (1970). "An actual controversy is a genuine dispute between adverse parties." *Kincaid v. Erie Ins. Co.*, 128

Ohio St.3d 322, 2010-Ohio-6036, 944 N.E.2d 207, ¶ 10.

{¶ 26} Ohio courts have held that when an individual graduates from high school, or is no longer interested in participating in interscholastic athletic activity, an action to participate in such activity is deemed moot. *Paige v. Ohio High School Athletic Assn.*, 2013-Ohio-4713, 999 N.E.2d 1211, (1st Dist.2013), ¶ 9, citing *Dankoff v. Ohio High School Athletic Assn.*, 9th Dist. No. 24076, 2008-Ohio-4559, ¶ 4. In view of the fact that in the case sub judice D.H. is a middle-school student who played football for two seasons and has demonstrated a continued interest in football, we believe that this controversy is "capable of repetition, yet evading review." *See State ex rel. Beacon Journal Pub. Co. v. Donaldson*, 63 Ohio St.3d 173, 175, 586 N.E.2d 101 (1992), quoting *State ex rel. Plain Dealer Pub. Co. v. Barnes*, 38 Ohio St.3d 165, 527 N.E.2d 807 (1988); *see also State ex rel. Calvary v. Upper Arlington*, 89 Ohio St.3d 229, 231, 729 N.E.2d 1182 (2000)(to meet the "capable of repetition, yet evade judicial review" exception to the mootness doctrine, appellant must show that both the challenged action is too short in duration to be fully litigated before its cessation or expiration and there is "a reasonable expectation that the same complaining party will be subjected to the same action again.") As such, we conclude that this particular issue is not moot.

{¶ 27} The trial court indicated, "The mother feels that the father should be required to transport the minor child to practice and/or scheduled games during his periods of visitation or in the alternative, to allow the mother to pick up and transport their daughter to her scheduled practices. The father has failed, prior to the hearing, to accept either invitation to effectuate same." Moreover, the court reported that in several in camera interviews D.H. discussed her desire to continue to play football.

{¶ 28} For the reasons stated above, we conclude that the trial court did not abuse its discretion when it temporarily suspended appellant's parenting time through football season. The trial court did not act unreasonably, arbitrarily or unconscionably.

{¶ 29} Accordingly, based on the foregoing reasons, we overrule appellant's second assignment of error.

III.

{¶ 30} In his final assignment of error, appellant asserts that the trial court abused its discretion by permitting D.H. to participate in football when appellant's lack of consent is reasonable. Appellant argues that the shared parenting plan gives him the authority to make decisions about his daughter's participation in extracurricular activities, and merely requires that he not unreasonably withhold his consent. Appellant thus contends that the trial court did not determine that his decision-making was unreasonable.

{¶ 31} In the case at bar, although appellant and appellee share responsibility to make decisions regarding extracurricular activities, the trial court concluded that appellant unreasonably refused to support D.H.'s football participation. While appellant also argued about the danger of football, most of the hearing focused on appellant's contention that football interfered with his parenting time. The court, however, observed that appellant allowed his daughter to spend three to four nights per week of his time with his mother, but argued that football took up too much of his time. Instead, appellant could spend time at practices and games to support his daughter's interest.

{¶ 32} In *In re A.A.J.*, 2015-Ohio-2222, 36 N.E.3d 791 (12th Dist.), mother filed a contempt motion after father refused to allow their child to participate in softball during his

parenting time. Although the case at bar is not a contempt action, the Twelfth District's general reasoning is nonetheless applicable. The court noted that the record did not indicate, and father did not assert, that softball practices or games filled every moment of his visitation time on his nights or weekends with the child, or that he had to forego other aspects of his ability to spend quality time with the child before, during, or after the practices or games. "The circumstances herein do not present an 'either/or' situation wherein Father can either have parenting time or the child can participate. Both can happen." *A.A.J.* at ¶ 19. Similarly, in the case at bar appellant showed an unreasonable lack of flexibility and concern for his child's interest and made the unilateral decision to have D.H. miss her games and practices during the 2019 season. In the case sub judice, the trial court concluded:

> [D.H.] is a child who undoubtedly will break many glass ceilings for her gender, not only in her current formative years, but also in her adult life. One of those matters for which she is outwardly proud, is her formidable participation in the sport of football, which she has engaged in for at least two years prior to the season in question. * * * There are times, and the Court sees this issue as one of those times, the family must recognize the interests of the developing young adult, and set aside their personal, and sometimes selfish desires, to allow said young adult to explore, pursue and effectuate those interests of that fleeting moment of their young life. The Court believes the desire to compete in a team sport she loves and excels in, is certainly one of those times.

{¶ 33} After our review, we conclude that the record supports the trial court's determination that appellant's statements and actions demonstrate that his lack of consent was unreasonable. Thus, we find no abuse of discretion. We recognize, however, that all extracurricular activities can impose severe time demands and can create some inconvenience. However, the benefits of those activities for children generally outweigh negative aspects of the activity. We also recognize that no evidence demonstrates that previously appellant has been

less than cooperative in assisting his daughter with participation in other extracurricular activities. However, appellant's previous actions and in-court statements demonstrate his unwillingness to allow his daughter to participate in this particular activity.

{¶ 34} Accordingly, based on the foregoing reasons, we overrule appellant's third assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court, Juvenile Division, to carry these judgments into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Hess, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.