[Cite as *State ex rel. Kirkpatrick v. Madison Twp.*, 2025-Ohio-5591.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

|  |  |  |
|---|---|---|
| State ex rel. Kirkpatrick, et al., | : | |
| | : | |
| Plaintiffs-Relators-Appellants and Cross-Appellees, | : | Case No. 25CA2 |
| | : | |
| v. | : | |
| | : | |
| Madison Township, Ohio, et al., | : | |
| | : | DECISION AND JUDGMENT ENTRY |
| Defendants-Respondents-Appellees and Cross-Appellants. | : | |
| | : | **RELEASED 12/8/2025** |

_____
APPEARANCES:

Kathleen F. Ryan and Hanna R. Puthoff, Wood & Lamping LLP, Cincinnati, Ohio for Plaintiffs-Relators-Appellants and Cross-Appellees.

Paul-Michael La Fayette and Ashley B. Hetzel, Freeman, Mathis & Gary LLP, Columbus, Ohio for Defendants-Respondents-Appellees.

Joseph R. Miller, Danielle S. Rice, Elizabeth S. Alexander, and Garrett M. Anderson, Vorys, Sater, Seymour and Pease LLP, Columbus, Ohio for Defendants-Respondents-Appellees and Cross-Appellants.

_____

Hess, J.

{¶1} Kyle Kirkpatrick appeals the judgment of the Pickaway County Court of Common Pleas dismissing his claims under Civ.R. 12(B)(6) for failure to state a claim upon which relief can be granted. Kirkpatrick raises two assignments of error. First, he contends that the trial court erred when it dismissed his declaratory judgment claim because a valid rezoning did not occur. He argues that (1) a valid written resolution and (2) the correct identification of acreage is required for there to be a valid rezoning, and the township trustees did not adopt a valid resolution

with accurate acreage. Second, he contends that the trial court erred when it dismissed his claims for injunctive relief and damages. He argues that these claims were dismissed because the underlying claims were dismissed and when the trial court's dismissal on those claims is reversed, the dismissal of his injunctive and damage claims should be reinstated. Kirkpatrick raises no error with the trial court's decision dismissing his mandamus claim.

{¶2} The appellees argue the trial court correctly found that a written resolution is not required by the zoning statute and the correct acreage was consistently identified. And, because the injunctive and damages claims are not standalone claims, the dismissal of Kirkpatrick's other claims means that the trial court properly found that those claims must also be dismissed.

{¶3} Certain appellees have filed a cross appeal contending that even though the trial court granted their motion to dismiss under Civ.R. 12(B)(6), the trial court should have dismissed the complaint for lack of subject matter jurisdiction under Civ.R. 12(B)(1) because the case was moot. They argue that the trial court improperly placed the burden of proof of this issue upon CTR, but that regardless of the improper burden-shifting, CTR proved that construction on the rezoned property has already commenced.

{¶4} We find that Kirkpatrick's claims are moot. The trial court should have dismissed them under Civ.R. 12(B)(1) for lack of subject matter jurisdiction, instead of dismissing them for failure to state a claim under Civ.R. 12(B)(6). We sustain cross appellants' first assignment of error. We dismiss cross appellants' remaining assignment of error and dismiss Kirkpatrick's appeal in its entirety.

## I. FACTS AND PROCEDURAL BACKGROUND

**{¶5}** In May 2022, CTR[1] applied to Madison Township to have two parcels[2] (239.24 acres) (the "Property") rezoned from RR, Rural Residential, Rickenbacker Impact Zone to RBD, Rickenbacker Business Development. According to the application, the Property owner, Scarbrough Farms, was in contract to sell 239.24 acres to CTR and gave authority for the rezoning application. The application identified the Property acreage as "239.240" and stated that CTR planned to "construct class-A industrial warehouse/manufacturing facilities. This is consistent with the RBD zoning district and other projects Madison Township zoned RBD." A map attached to the application identified the two parcels by parcel number and identified the estimated total acreage as "237.44 +/-."

**{¶6}** In July 2022, the Madison Township zoning commission held a public meeting to discuss the rezoning and in August 2022, the zoning commission voted to approve the rezoning. The approval stated that it approved "to rezone 239.240 acres . . . from Rural Residential to Rickenbacker Business District . . . ." A legal description "for a 239.240 acre tract" was signed by the surveyor and included as an exhibit to the zoning commission's approval. On August 30, 2022, the Madison Township Trustees voted to approve the rezoning of the 239.24 acres.

**{¶7}** In the fall of 2022, after the Madison Township Trustees approved the rezoning, Kirkpatrick, who opposed the rezoning, attempted to place a

---

[1] For simplicity and because the distinctions have no legal relevance for our purposes, we refer to the developer defendants collectively as CTR, which was also the trial court's collective reference for them. The developer defendants named in the first amended complaint are CTR Partners, LLC (which was improperly named as CT Realty, LLC) and W-CTR Scarbrough Land Holdings VIII, L.L.C.

[2] The two parcels were Parcel Number F1600010006001 and Parcel Number F1600010005900.

referendum about the rezoning on the ballot for the electors of Madison Township. Kirkpatrick filed the referendum petition with the Pickaway County Board of Elections. However, in November 2022, Scarbrough Farms, the Property owner, filed a protest with the Board of Elections, in which it explained that the zoning referendum proposed by Kirkpatrick violated R.C. 519.12(H) because it contained a material omission, was misleading, and failed to include an appropriate map. On January 4, 2023, the Board of Elections agreed with Scarbrough Farms, upheld the protest, and dismissed Kirkpatrick's referendum petition.

{¶8} On August 27, 2024, two years after the Madison Township Trustees approved the rezoning of the Property and a year and a half after the Board of Elections rejected his referendum petition, Kirkpatrick filed a complaint in the Pickaway County Court of Common Pleas in which he sought to have the rezoning of the Property declared illegal, null, and void. Kirkpatrick sued Madison Township, the Madison Township Zoning Inspector, and the Madison Township Board of Trustees for the actions they took in approving the rezoning (the Township defendants), Scarbrough Farms (the former Property owner), CT Realty, and various W-CTR Scarbrough Land Holding companies (the rezoning applicant and developer). Several months later, Kirkpatrick filed an amended complaint to correct the names of the necessary parties and to reflect that Scarbrough Farms had transferred the Property. Kirkpatrick voluntarily dismissed Scarbrough Farms. In the proceedings below, the parties and the trial court referred to the parties in their collective groups as Kirkpatrick, Township, and CTR, and for ease and consistency we do likewise.

**{¶9}** The Township and CTR filed motions to dismiss the complaint under Civ.R. 12(B)(1) and 12(B)(6).[3] CTR argued that under Civ.R. 12(B)(1), the trial court lacked jurisdiction over Kirkpatrick's claims because they are moot. CTR provided evidence that it had invested more than $23 million in the Property, including conducting environmental and geotechnical reports, and $6 million in constructing roadway enhancements. CTR argued that under Ohio law, the commencement of construction rendered Kirkpatrick's claims moot. Alternatively, CTR argued that Kirkpatrick's claims failed to state a claim under which relief can be granted under Civ.R. 12(B)(6). CTR argued that Kirkpatrick's declaratory judgment claim was based on the mistaken assertion that the Trustees had to memorialize the zoning resolution in a separate writing, but that the Supreme Court of Ohio has ruled on that issue and has held that there is no duty on the part of the Trustees to adopt written resolutions adopting rezoning approvals.

**{¶10}** To support its mootness argument, CTR included an affidavit from Robert Huthnance, a partner at CTR who manages the day-to-day operations, development, finances, and construction activities that occur on the Property. Huthnance provided some relevant history of the development and explained that CTR had previously developed an existing industrial park in Madison Township and wanted to extend it to include industrial warehouse and manufacturing facilities. In 2021, CTR identified the Property as an ideal location for an extension of its existing industrial park. CTR entered into a purchase contract with Scarbough

---

[3] Because the parties do not contest the trial court's dismissal of the mandamus claim, we do not address it. The Township argued the mandamus claim in its own separate motion to dismiss. Thus, for purposes of our analysis, we refer to CTR's motion to dismiss.

Farms to purchase the Property, contingent upon the Property being successfully rezoned. After the Board of Elections decertified Kirkpatrick's referendum petition in January 2023, and in reliance on the rezoning of the Property, CTR purchased the Property in June 2023, paying four to five times higher than it would have had the Property been purchased as farmland. Construction commenced in November 2023 and included $6,716,449 for a new roadway and improvements to an existing roadway, environmental reports, geotechnical reports, and water, sewer, and stormwater control. According to Huthnance, CTR has currently invested more than $23 million into the Property and supporting infrastructure in reliance on the rezoning.

**{¶11}** CTR also argued that the complaint should be dismissed for failure to state a claim under Civ.R. 12(B)(6) because his claims were barred by laches, he failed to state a claim for a declaratory judgment, and his claims for injunctive relief and damages were not standalone claims under Ohio law. Therefore, because the declaratory judgment claim should be dismissed, the injunctive and damages claims must also be dismissed.

**{¶12}** In support of the four elements of a laches defense, CTR argued that Kirkpatrick: (1) unduly delayed filing his complaint for 19 months after the Board of Elections sustained the referendum protest and the rezoning became final; (2) provided no excuse for the delay and did not even address the delay in his complaint; (3) knew or should have known of any claims he had concerning the rezoning when the Trustees approved the rezoning in August 2022, or not later than the time the referendum protest was sustained in January 2023; and (4)

caused prejudice to CTR because it invested more than $23 million in its purchase of the Property and related construction.

**{¶13}** CTR argued that the declaratory judgment claim failed to state a claim because, under R.C. 519.112, a private right of action is given to challenge a "procedural error in the adoption of the resolution or amendment." R.C. 519.12 outlines the steps for the rezoning process and even accepting the allegations in the complaint as true, CTR argued there was no allegation of any procedural errors in the Township's rezoning. Kirkpatrick's purported procedural errors are inaccuracies in a map, which was attached as an exhibit to the application, and the lack of a separate written zoning resolution. However, CTR argued that even if true, these do not constitute procedural errors under the statute.

**{¶14}** Last, because injunctive relief and damages are remedies, not standalone claims, CTR argued those claims must be dismissed.

**{¶15}** Kirkpatrick opposed the motions and submitted his own affidavit. Kirkpatrick argued that even though the zoning application and approval expressly stated that the rezoned Property was 239.24 acres, and a legal description of the Property stated it was 239.24 acres, there were maps attached as exhibits that included confusing references to 326.847 and 357.147 acres. He also argued that the Trustees were required to adopt a written resolution with clearly defined acreage.

**{¶16}** Kirkpatrick also argued, somewhat paradoxically, that even though he submitted a referendum petition to the Board of Elections in 2022, there never actually ever was a valid rezoning resolution on which he could have based a

referendum. Therefore, not only has he not been dilatory in bringing his claims, but his deadline for bringing a referendum before the Board of Elections has not yet begun.

{¶17} In response to CTR's mootness argument, Kirkpatrick argued that CTR did not produce any evidence that construction commenced in November 2023. He argued that the road expansion project Huthnance testified to in his affidavit was not commenced in November 2023, as Huthnance averred, but was completed in August 2022. To support his claim that there had been no road construction work done since August 2022, Kirkpatrick submitted his own affidavit and compiled a multi-page exhibit of photographs of a section of Airbase Road that he pulled off Google Maps (dated August 2024) and the auditor's website (dated December 2022), plus a photo he took of that same section of Airbase Road with his cell phone on November 16, 2024. Kirkpatrick testified that the roadwork on the section of Airbase Road that is depicted in the photographs was all completed in August 2022. He also testified that the Property is about 2/10ths of a mile beyond the end of Airbase Road and the roadway improvements on Airbase Road "does not even touch the Property at issue." Kirkpatrick testified that he drove around the area and, other than the road construction completed in 2022 referenced in the photographs, "I have not observed any additional road construction or expansion appearing to have been made in conjunction with the Property. . . ." Kirkpatrick also prefaced his statements with "To my knowledge, no road has been constructed . . . ."

**{¶18}** In response to CTR's laches defense, Kirkpatrick argued that there is a two-year statute of limitations that commenced on August 30, 2022. His lawsuit was filed on August 27, 2024, so he filed within the two-year statute of limitations and laches should not be a bar. He also argued that CTR failed to show any prejudice from his delay based on his belief that the roadway construction, which he believes was completed in 2022, was their only claim of prejudice. Kirkpatrick did not address CTR's purchase of the Property, or its expenditures on geotechnical reports, environmental reports, water, sewer, and storm controls, and legal fees.

**{¶19}** To support his claim for a declaratory judgment, Kirkpatrick argued that the maps attached to the application were confusing and referred to different acreages. He argued that the "application process was full of misleading documents of varied acreage and boundaries, bookended with an unclear application at the outset, and a 'vote' with no written resolution by the Trustees."

**{¶20}** In its reply, CTR addressed Kirkpatrick's affidavit, which claimed that "to his knowledge" no roadwork construction had occurred since August 2022. CTR explained that the road construction identified in Huthnance's affidavit did, in fact, commence in November 2023 as Huthnance testified. Huthnance was not referring to work on the Airbase Road segment Kirkpatrick photographed and included as an exhibit to his affidavit, but construction work on the new roadway that connected the Property to the existing industrial park. Because Kirkpatrick's affidavit testimony was based on his experiences driving around the area, he focused only on Airbase Road. However, CTR explained that Huthnance's affidavit

referred to construction on new roadways that would not be visible to Kirkpatrick from Airbase Road. CTR invited the trial court to hold an evidentiary hearing on the issue of mootness, if necessary, and it offered to provide the trial court with an updated site plan that more accurately reflected the current state of development. CTR argued that nothing in Kirkpatrick's affidavit refuted Huthnance's statements that construction commenced in November 2023 or that CTR has already invested $23 million developing the Property, including over $6.7 million on roadway construction and nearly $ .5 million on environmental and geotechnical work.

**{¶21}** The trial court granted the motions to dismiss and dismissed Kirkpatrick's complaint against all the defendants. On the jurisdictional issue of mootness, the trial court acknowledged that the parties had each submitted affidavits and that Kirkpatrick argued that no construction had commenced and that CTR disputed this. The trial court found, "A careful perusal of the submitted evidence leaves this court uncertain." As a result of this uncertainty, the trial court denied CTR's motion to dismiss for lack of jurisdiction under Civ.R. 12(B)(1). On the laches defense, the trial court stated that ruling on a Civ.R. 12(B)(6) motion, it cannot look beyond the complaint for evidence supporting laches and it declined to consider Huthnance's affidavit for the Civ.R. 12(B)(6) motion or to rule on the laches defense. On the declaratory judgment claim, the trial court found that the Township followed all the requirements under R.C. 519.12 in rezoning the property and denied the claim. Because there were no remaining claims, the trial court dismissed the injunctive and damages claims and dismissed the complaint under Civ.R. 12(B)(6) against all the defendants.

{¶22} Kirkpatrick appealed the trial court's decision to dismiss the declaratory judgment, injunctive, and damages claims. CTR cross-appealed the trial court's denial of its motion to dismiss for lack of jurisdiction under the mootness doctrine and its decision not to rule on the laches defense.

## II.    ASSIGNMENTS OF ERROR

{¶23} Kirkpatrick's appeal raises the following assignments of error:

1.    The trial court erred when it dismissed the Plaintiffs-Appellants' claim for declaratory judgment under Civ.R. 12(B)(6), failure to state a claim upon which relief can be granted.

2.    The trial court erred when it dismissed the Plaintiffs-Appellants' claim for injunctive relief and damages under Civ.R. 12(B)(6), failure to state a claim upon which relief can be granted.

{¶24} CTR's cross appeal raises the following assignments of error:

1.    The trial court lacked subject matter jurisdiction because Kirkpatrick's claims sought to block construction that had already commenced.

2.    The trial court erred by not dismissing Kirkpatrick's claims under the doctrine of laches.

## III. LEGAL ANALYSIS

### A. The Trial Court's Jurisdiction

{¶25} Because subject matter jurisdiction is a threshold question that will prevent a court from reaching the underlying issues in the case, our review must begin with CTR's assignment of error raising the trial court's lack of jurisdiction under the mootness doctrine. *Williams v. Scioto Township Trustees*, 2017-Ohio-1099, ¶ 8 (4th Dist.) (where arguments raised in a cross appeal contest the trial court's jurisdiction they must be addressed first).

## 1. Standard of Review

**{¶26}** We review a trial court's decision denying a motion to dismiss for lack of subject matter jurisdiction under a de novo standard of review. *Williams* at ¶ 9. When reviewing a Civ.R. 12(B)(1) motion to dismiss, a court is not limited to the allegations in the pleadings but may consider extraneous evidence without converting the motion into one for summary judgment. *Id.* citing *Southgate Dev. Corp. v. Columbia Gas. Transmission Corp.*, 48 Ohio St.2d 211 (1976), paragraph one of the syllabus. " '[A]n event that causes a case to become moot may be proved by extrinsic evidence outside the record.' " *State ex rel. Nelson v. Russo*, 89 Ohio St.3d 227, 228 (2000), quoting *Pewitt v. Lorain Correctional Inst.*, 64 Ohio St.3d 470, 472 (1992).

## 2. Legal Analysis

**{¶27}** A court lacks jurisdiction over a case when is has become moot.

> "The doctrine of mootness is rooted in the 'case' or 'controversy' language of Section 2, Article III of the United States Constitution and in the general notion of judicial restraint." "While Ohio has no constitutional counterpart to Section 2, Article III, Ohio courts have long recognized that a court cannot entertain jurisdiction over a moot controversy." A case becomes moot, if at any stage, there ceases to be an actual controversy between the parties. "An actual controversy is a genuine dispute between adverse parties."

(Citations omitted.) *Rhoden v. Hurt*, 2020-Ohio-5065, ¶ 25 (4th Dist.).

**{¶28}** In cases challenging land development and construction projects, a case becomes moot when construction commences. *State ex rel. Wood v. Rocky River,* 2021-Ohio-3313, ¶ 13, citing *Schuster v. Avon Lake*, 2003-Ohio-6587, ¶ 8 (9th Dist.); *Ebersole v. City of Powell*, 2019-Ohio-946, ¶22 (5th Dist.). In *Schuster, supra,* the city approved a housing development. A neighboring property owner

opposed it and filed a complaint seeking to declare the development ordinance void. *Id*. at ¶ 2-4. The appellate court found the case moot because the construction of the project had already begun. *Id.* at ¶ 8.

**{¶29}** In *Ebersole, supra*, two residents opposed a development project approved by the City of Powell. The developer sought to have the case dismissed as moot because construction of the project had already commenced. The appellate court reviewed Ohio caselaw and found where construction had commenced, the case is rendered moot. *Ebersole*, 2019-Ohio-946, ¶ 22-25 (reviewing six construction cases in four different Ohio appellate districts). The court found that the evidence presented by affidavit showed that the developer had installed erosion controls and perimeter fencing, cleared trees, did grading work, started environmental work, and entered into architectural contracts. The court found that the commencement of this construction work made the action moot. *Id*. at ¶ 31.

**{¶30}** Similarly in *Smetzer v. Catawba Island Twp. Bd. of Zoning Appeals*, 2018-Ohio-4238 (6th Dist.), a landowner brought an action challenging the township zoning inspector's approval of a construction project. The developer argued that the litigation was moot and filed a motion to dismiss the action. To support its motion, the developer submitted an employee affidavit in which he testified that site work had been performed at a cost of $22,800 and that additional work had been commenced on the site at the cost of $251,063 as of the date of the motion to dismiss. The court dismissed the case as moot. *Id.* at ¶ 12-13; *Coates Run Property LL, L.L.C. v. Athens Bd. of Zoning Appeals*, 2015-Ohio-4732, ¶ 13

(4th Dist.) (where no stay or injunction was obtained and construction of the development has proceeded at substantial expense, the case is dismissed as moot).

{¶31} Here CTR sought to have the case dismissed because construction had commenced. Huthnance's affidavit provided evidence that construction commenced in November 2023 and included: (1) $6,716,449 for a new roadway and improvements to an existing roadway; (2) site development in the form of environmental and geotechnical reports; and (3) the commencement of water, sewer, and stormwater control. According to Huthnance, CTR had invested more than $23 million in the Property and supporting infrastructure at the time of the motion to dismiss.

{¶32} Kirkpatrick opposed the motion to dismiss on mootness grounds arguing that the case is not moot. Kirkpatrick argued that CTR produced no evidence, other than Huthnance's affidavit, that construction had commenced. Kirkpatrick attempted to discredit Huthnance's affidavit by arguing that it lacked specificity and was misleading because the road improvements identified by Huthnance had already occurred in August 2022. Kirkpatrick also argued that the mootness doctrine does not apply to his type of case, which he characterized as "a challenge to the validity of legislation enactment." However, Kirkpatrick failed to provide any legal authority for his claim that the mootness doctrine had no application to his challenge.

**{¶33}** First, we reject Kirkpatrick's argument that the mootness doctrine is inapplicable to this case. The Supreme Court of Ohio has addressed the issue of when a matter becomes moot:

> The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. It necessarily follows that when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal. And such a fact, when not appearing on the record, may be proved by extrinsic evidence.

*Miner v. Witt*, 82 Ohio St. 237, 238 (1910). The mootness doctrine contains two exceptions, but the parties have not argued that either of those two exceptions apply. *Coates Run Property LL, L.L.C. v. Athens Bd. of Zoning Appeals*, 2015-Ohio-4732, ¶ 15 (4th Dist.) (the two exceptions are if the issue is capable of repetition, yet evading review, or if the issue involves a matter of great public or general interest). There is no exception provided for cases challenging "the validity of a legislative enactment" as Kirkpatrick contends.

**{¶34}** Second, we reject CTR's argument that the trial court improperly placed the burden of proof on CTR to show the case was moot. It is true that "once the existence of subject matter jurisdiction has been challenged, the burden of establishing it always rests on the party asserting jurisdiction." *Linkous v. Mayfield,* 1991 WL 100358, *4 (June 4, 1991 4th Dist.). But where that challenge is based on the mootness doctrine, the party asserting that the case is moot bears the burden of proof. *State ex rel. Parikh v. Berkowitz*, 2024-Ohio-4686, ¶ 58 (1st Dist.)

(the burden to prove that a claim is moot rests with the party asserting mootness and that burden may be met by affidavit).

**{¶35}** The trial court reviewed the evidence the parties submitted and was "uncertain" about whether there was sufficient evidence that the case was moot. But because jurisdiction is a threshold issue that must be definitively decided before considering the merits, the trial court had to first determine whether the case was moot under Civ.R. 12(B)(1) before it addressed the merits under Civ.R. 12(B)(6). *Stepp v. Starrett*, 2019-Ohio-4707, ¶ 3 (4th Dist.) (a court cannot address the merits of a case if it lacks jurisdiction). The trial court could not deny CTR's Civ.R. 12(B)(1) motion on the basis of uncertainty.

**{¶36}** Based on our de novo review of the evidence, we find that Kirkpatrick's case is moot. CTR met its burden of proof when it presented affidavit evidence that construction commenced in November 2023. Moreover, Kirkpatrick never sought or obtained a stay, either in the trial court or in our court, to prevent the ongoing construction in this case. The trial court should have dismissed the case for lack of subject matter jurisdiction under Civ.R. 12(B)(1) under the mootness doctrine. As a result, the trial court lacked jurisdiction to address the merits of the Civ.R. 12(B)(6) motion.

**{¶37}** Specifically, we find that CTR provided evidence through Huthnance's affidavit that construction had commenced as of November 2023. Kirkpatrick's affidavit claiming that certain roadway construction occurred and was completed in August 2022 does not conflict with or refute Huthnance's affidavit claiming that additional roadwork was performed after November 2023. CTR had

an existing industrial park in that area prior to 2022 and acknowledged that it performed roadwork in 2022. However, this does not mean that CTR did not also commence additional roadwork in November 2023 – they are not mutually exclusive events.

{¶38} When we compare the level of personal knowledge and expertise each of the affiants possess about the construction work, we find that Huthnance was in a superior position to know what construction activities were occurring on the Property. Huthnance managed CTR's day-to-day operations, including the construction activities, occurring on the Property. As a result, Huthnance had direct, personal knowledge of the construction activities, when they occurred, and how much they cost. In contrast, Kirkpatrick did not claim to be employed by or involved in any way with CTR's operations. His testimony of what had occurred in the area was limited to what he was able to observe as he drove around the area on public roads and what he could obtain from Google Maps and historic photographs from the public records.

{¶39} Because we find that the trial court lacked jurisdiction, we do not review the merits of the trial court's underlying decision granting the Civ.R. 12(B)(6) motion. "[W]hen an appellate court determines that the trial court was without jurisdiction, it is not proper for the reviewing court to decide the merits of the case." *Eagle Fireworks, Inc. v. Ohio Dept. of Commerce*, 2004-Ohio-509, ¶ 7 (4th Dist.). We sustain CTR's first assignment of error on its cross appeal. We dismiss the remaining assignment of error in CTR's cross appeal, and we dismiss Kirkpatrick's appeal.

**{¶40}** The trial court lacked jurisdiction to consider these claims and rather than dismiss them under Civ.R. 12(B)(6) on the merits, should have dismissed them under Civ.R. 12(B)(1) for lack of subject matter jurisdiction due to mootness. Therefore, under the authority of App.R. 12(A)(1)(a), the judgment of the trial court is modified to reflect the dismissal of Kirkpatrick's claims for lack of subject matter jurisdiction under Civ.R. 12(B)(1). The rest of the trial court's judgment shall remain intact with respect to the mandamus dismissal which was not challenged on appeal and was not before this court. Accordingly, we affirm the judgment with this modification. *State v. Bear,* 2021-Ohio-1539, ¶ 41 (4th Dist.).

## IV. CONCLUSION

**{¶41}** We sustain CTR's first assignment of error, dismiss CTR's second assignment of error, dismiss Kirkpatrick's assignments of error, and affirm, with modification, the trial court's judgment.

**JUDGMENT AFFIRMED AS MODIFIED.**

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED AS MODIFIED. Costs to be paid by appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court,


_____
Michael D. Hess
Judge


**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**